909 So.2d 323 (2005)
Kim Leonard MOSBY, Appellant,
v.
Sherri C. HARRELL and Florida Department of Law Enforcement, Appellees.
No. 1D04-4206.
District Court of Appeal of Florida, First District.
June 23, 2005.
Rehearing Denied August 29, 2005.
*325 Craig J. Cannon, Ocala, for Appellant.
Patrick H. Gonyear and Catherine A. Riggins of Vernis & Bowling of Miami, P.A., North Miami, for Appellees.
ALLEN, J.
The appellant challenges the trial court's dismissal with prejudice of three counts of his complaint for failure to state a cause of action against the Florida Department of *326 Law Enforcement (FDLE) upon the trial court's determination that sovereign immunity insulates FDLE from liability in connection with negligent DNA testing and reporting by an FDLE employee and in connection with FDLE's negligent training and supervision of the employee. Because a cause of action against a private individual or business employer would exist as to the claims of negligent testing and reporting in the circumstances alleged in the complaint, and because these testing and reporting activities do not implicate "discretionary" level functions for which FDLE enjoys immunity from liability for its negligence, we reverse the trial court's dismissal of counts I (negligent testing) and III (negligent reporting) of the appellant's complaint. We recognize that count V of the appellant's complaint does not state a cause of action for negligent training and supervision, but because sovereign immunity does not necessarily preclude a cause of action against the state or its subsidiaries for negligent training and supervision, and because it does not clearly appear that an additional effort by the appellant to state a cause of action on these theories would be futile, we conclude that the trial court's with-prejudice dismissal of count V of the complaint was improper.
As the factual foundation for its ruling on a motion to dismiss a complaint for failure to state a cause of action, a court may consider only the factual allegations set forth in the complaint, must accept those allegations as true, and must resolve in the plaintiff's favor all inferences that might be drawn from those allegations. Gowan v. Bay County, 744 So.2d 1136 (Fla. 1st DCA 1999); W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297 (Fla. 1st DCA 1999). Determination of whether a complaint sufficiently states a cause of action is an issue of law. Accordingly, a trial court's ruling on a motion to dismiss for failure to state a cause of action is subject to de novo review. Townsend.
The factual allegations in the complaint that are material to this appeal may be summarized as follows: The appellant was a police officer with the Ocala Police Department when a woman reported that the appellant had forced her to submit to a sexual relationship. Following the woman's report, DNA evidence was collected from her residence and submitted to FDLE's Tallahassee lab for testing. FDLE negligently trained and supervised the FDLE employee who conducted the DNA testing and reported the results to the appellant's employer. The testing was negligently performed by the FDLE employee, who then negligently and incorrectly reported to the Ocala Police Department that the appellant was the source of the DNA evidence. As a consequence of this negligent training, supervision, testing, and reporting, the appellant suffered various damages, including loss of wages and benefits following termination of his employment as a police officer.
The state and its subsidiaries are generally immune from tort liability, but pursuant to authority contained in article X, section 13, of the Florida Constitution, this general tort immunity has been waived by section 768.28(1), Florida Statutes, "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of the state." Although this statutory language evinces a legislative intent to waive sovereign immunity on a broad basis, constitutional separation-of-powers considerations require that certain discretionary or planning level governmental functions remain immune from tort liability. See Commercial Carrier Corp. v. Indian River County, *327 371 So.2d 1010 (Fla.1979). Accordingly, when the state or its subsidiary is sued in negligence, a court must first determine whether the circumstances alleged would subject a private person or business to liability under Florida law. If a private person or business would be subject to liability under the circumstances alleged, the court must then determine whether the challenged act or acts were "discretionary" in nature, and not merely "operational." See Henderson v. Bowden, 737 So.2d 532 (Fla.1999); Kaisner v. Kolb, 543 So.2d 732 (Fla.1989). See also Lewis v. City of St. Petersburg, 260 F.3d 1260 (11th Cir.2001). We therefore address these issues in order, dealing first with the counts alleging negligent testing and reporting, and then dealing with the count alleging negligent training and supervision.
To state a claim for negligence under Florida law, a plaintiff must allege a duty of care owed by the defendant to the plaintiff, breach of that duty of care, and resulting damages. Paterson v. Deeb, 472 So.2d 1210 (Fla. 1st DCA 1985). Because the appellant's complaint sufficiently alleges the required breach and damages elements as to counts I and III of the complaint, resolution of the first issue for determination turns on whether a private person or business in the position of FDLE would owe a duty of care to the appellant in the circumstances alleged in the complaint.
When a defendant's conduct creates a foreseeable zone of risk, Florida law generally will recognize a duty upon the defendant to either lessen the risk or see that sufficient precautions are taken to protect persons within that zone of risk from the harm that the risk poses. Henderson; McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992). See also Pollock v. Florida Dep't of Highway Patrol, 882 So.2d 928 (Fla.2004). Consistent with this general principle, a private person or business conducting and reporting the testing involved in the present case would have owed the appellant a duty to exercise reasonable care in doing so, because it was reasonably foreseeable that negligent testing and reporting would imperil the appellant's continued employment as a police officer.
Ragsdale v. Mount Sinai Medical Center, 770 So.2d 167 (Fla. 3d DCA 2000), is a decision recognizing a duty of care under facts closely analogous to those involved in the present case. Ragsdale was a Metro-Dade police officer who submitted to urinalysis at Mount Sinai in connection with a physical examination required by the Metro-Dade Police Department. She alleged that Mount Sinai's testing of her urine for the presence of narcotics was negligently conducted and that Mount Sinai thereafter negligently and incorrectly reported to the Metro-Dade Police Department that her urine contained cocaine. In holding that the trial court had erred in determining that Mount Sinai owed Ragsdale no duty of reasonable care in connection with this testing and reporting, the third district reasoned as follows:
It was reasonably foreseeable that Ragsdale would be harmed if Mount Sinai negligently reported test results to the County. It is a virtual certainty that Ragsdale would be discharged as a police officer in the event of a positive drug test result. Thus, Ragsdale is a foreseeable plaintiff and Mount Sinai owes a duty to her.
770 So.2d at 169.
Because a private person or business employer in the position of FDLE would owe a duty of care to the appellant in connection with the DNA testing and reporting involved in this case, we next address whether the testing and reporting *328 activities were discretionary or planning level governmental activities for which FDLE was entitled to sovereign immunity, or were instead merely operational level activities. The term "discretionary" in this context means that the governmental act in question involved an exercise of executive or legislative power such that a court's intervention by way of tort law would inappropriately entangle the court in fundamental questions of policy and planning. See Department of Health and Rehabilitative Services v. B.J.M., 656 So.2d 906 (Fla.1995); Kaisner. An "operational" function, on the other hand, is one not necessary to or inherent in policy, merely reflecting a secondary decision as to how those policies or plans will be implemented. Id.
As the Florida Supreme Court explained in Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla.1985), "[h]ow a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care." 468 So.2d at 919 (emphasis supplied). The supreme court explained that this discretionary power to enforce the law is enjoyed on an equal basis by both traditional law enforcement officials and public safety regulatory officials such as building inspectors, fire department inspectors, health department inspectors, elevator inspectors, hotel inspectors, and environmental inspectors. But the supreme court was careful to emphasize that the activities for which law enforcement and public safety regulatory officials enjoy immunity are only those activities involving "basic discretionary judgment in the enforcement of the police power, public safety functions by a state, county, or municipal governmental entity." 468 So.2d at 923. Accordingly, as the supreme court explained in Henderson, for example, a law enforcement officer has discretion and enjoys immunity for his decision as to whether he or she will detain or arrest a person, but once the decision to effect an arrest or detention is made, the officer does not enjoy immunity for his negligent, operational level acts that follow the arrest or detention.
Although the appellant argues that the DNA testing in the present case involved a "forensic service" and not a law enforcement activity, we have little difficulty in concluding that FDLE performed a law enforcement function when it tested the DNA evidence and then reported the results of this testing to the Ocala Police Department for use in a pending criminal prosecution of the appellant and in a pending internal investigation of the appellant's alleged criminal acts. Accordingly, sovereign immunity pertained as to FDLE's testing and reporting activities to the extent that these activities were discretionary in nature.
Our decision in Hines v. Columbia Livestock Market, 516 So.2d 1040 (Fla. 1st DCA 1987), review denied, 525 So.2d 877 (Fla.1988), appears to be directly on point, and indicates that the testing and reporting activities were operational level functions. Although Hines involved testing by public safety regulatory officials rather than law enforcement officials, Trianon Park teaches that sovereign immunity analysis is the same for these two types of officials. Hines took his cattle to the Columbia County Livestock Market for sale. An agent of the Florida Department of Agriculture then conducted brucellosis testing on the cattle. When the test indicated that the cattle were infected, they were destroyed and Hines's remaining cattle were quarantined and branded. Hines thereafter sued the Department of Agriculture, *329 alleging that the testing was negligently conducted and had incorrectly indicated that the cattle were infected. After the trial court entered summary judgment for the department on the theory that the testing constituted a discretionary activity for which the department enjoyed sovereign immunity, we reversed the summary judgment and held that Hines was entitled to proceed with his lawsuit because his complaint was "not limited to the discretionary governmental decision to implement a brucellosis testing program, or the choice of a particular testing procedure." 516 So.2d at 1042. Because the appellant's complaint in the present case is similarly neither limited to the discretionary decision of FDLE to implement a DNA testing program nor limited to FDLE's choice of a particular DNA testing or reporting procedure, the counts of the appellant's complaint alleging negligent testing and reporting should not have been dismissed.
Focusing upon single sentences appearing in two Fifth District Court of Appeal decisions, FDLE argues that its DNA testing and reporting activities were part of a law enforcement "investigation," and that law enforcement officials are entitled to sovereign immunity in connection with their "investigations." While it might fairly be argued that DNA testing by FDLE is part of a law enforcement investigation, we reject the notion that law enforcement investigative activities enjoy blanket immunity.
The first fifth district case on which FDLE relies is State v. Kowalski, 617 So.2d 1099 (Fla. 5th DCA 1993). In Kowalski, without providing a specific factual context, the court wrote that "the State Attorney's office is immune from suit on matters relating to its decision as to whether and how to conduct a criminal investigation." Kowalski provides no support for FDLE's position in the present case, for two reasons. First, without a recited factual context, there is no reason to assume that Kowalski complained of anything other than the state attorney's negligence in failing to initiate an investigation or the state attorney's negligence in selecting a particular investigative procedure, either of which would involve discretionary governmental activities even under the rationale of our decision in Hines. And second, state attorneys enjoy much broader sovereign immunity than do most other officials who enforce the laws. See Office of the State Attorney, Fourth Judicial Circuit v. Parrotino, 628 So.2d 1097 (Fla.1993).
The second of the fifth district decisions relied upon by FDLE is E.J. Strickland Construction, Inc. v. Department of Agriculture, 515 So.2d 1331 (Fla. 5th DCA 1987). This decision is unpersuasive because it predates several decisions of the Florida Supreme Court, beginning with Kaisner, recognizing that sovereign immunity often does not insulate law enforcement officers from liability for their negligence in connection with their investigative activities. These supreme court decisions, as well as decisions of this court such as Moore v. State, Florida Fish and Wildlife Conservation Comm'n, 861 So.2d 1251 (Fla. 1st DCA 2003), and even fifth district decisions such as Owens v. Department of Highway Safety and Motor Vehicles, 572 So.2d 953 (Fla. 5th DCA 1990), recognize that liability for operational level negligence in connection with law enforcement investigations runs to persons within the foreseeable zone of risk who suffer injuries as a consequence of the negligence. And this is true whether the person negligently injured is the object of the investigation as in Kaisner and Moore, or some third party as in Henderson and Owens.
*330 Finally, we address the dismissal with prejudice of count V of the appellant's complaint, the count in which the appellant endeavored to state a cause of action against FDLE for its alleged negligent training and supervision of the FDLE employee who performed the DNA testing and reporting. Because the appellant did not allege all of the necessary elements of a cause of action for negligent training and supervision, we do not fault the trial court for dismissing count V of the appellant's complaint. See Slonin v. City of West Palm Beach, 896 So.2d 882 (Fla. 4th DCA 2005); Storm v. Town of Ponce Inlet, 866 So.2d 713 (Fla. 5th DCA 2004). See also Malicki v. Doe, 814 So.2d 347, 362 n. 15 (Fla.2002). But because decisions such as Slonin and Storm recognize that sovereign immunity does not uniformly preclude claims against the state and its subsidiaries for negligent training and supervision, and because it does not appear that an additional effort by the appellant to state a cause of action on these theories would necessarily be futile, the dismissal should have been without prejudice. See Florida Nat'l Org. for Women, Inc. v. State, 832 So.2d 911 (Fla. 1st DCA 2002).
The trial court's dismissal with prejudice of counts I, III, and V of the appellant's complaint is accordingly reversed, and this case is remanded.
BARFIELD J., concurs; THOMAS, J., specially concurs with opinion.
THOMAS, J., specially concurring.
This case holds that FDLE owes a duty of care when testing a person's DNA during a criminal investigation. I believe this case may have serious ramifications on the investigation of crimes and enforcement of the state's criminal laws. I agree with the majority that no logical or legally sustainable basis exists for distinguishing this case from our prior decision in Hines v. Columbia Livestock Market, 516 So.2d 1040 (Fla. 1st DCA 1987), review denied, 525 So.2d 877 (Fla.1988). Although I believe Hines was incorrectly decided, I am required to recognize this controlling precedent.
I believe the decision in Layton v. Fla. Department of Highway Safety and Motor Vehicles, 676 So.2d 1038 (Fla. 1st DCA 1996), expresses the better view when determining whether a state agency owes a duty of care to an individual. In Layton, this court correctly held that the state agency owed no legal duty to a person arrested based on the agency's erroneous driver's license information. I recognize that the decision in Layton is factually distinguishable from the instant case and that it did not discuss or recede from the decision in Hines. I am constrained, therefore, to concur based on Hines. I would recede from Hines for the reasons stated below and affirm the trial court's ruling dismissing the plaintiff's claims.
In my view, FDLE had no statutory or common law duty when analyzing Appellant's DNA pursuant to a criminal investigation. FDLE's conduct did not place Appellant in danger or establish a special relationship with Appellant, which would have placed Appellant in a foreseeable zone of risk. Because FDLE did not owe a duty of care to Appellant, this court is not required to determine the question of sovereign immunity.
The testing performed in this case was conducted pursuant to a criminal investigation after Appellant was accused of forcing a sexual relationship with a woman. I acknowledge that this is a close question, given precedent imposing duties of care on law enforcement agencies through the zone of risk test first defined in Kaisner v. Kolb, 543 So.2d 732 (Fla.1989). Henderson v. Bowden, 737 So.2d 532 (Fla. 1999) (imposing a duty of care when detaining *331 a DUI suspect); City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992) (imposing a duty of care during high speed chases); Brown v. Miami-Dade County, 837 So.2d 414 (Fla. 3d DCA 2001) (imposing a duty of care to bystanders during a sting operation); Hartley v. Floyd, 512 So.2d 1022 (Fla. 1st DCA 1987) (imposing a duty of care when informing a person that the agency will act in a certain manner).
The Florida Supreme Court stated in Pollock v. Florida Dep't Highway Patrol, 882 So.2d 928, 935 (Fla.2004), that a special tort duty can arise when law enforcement places people in a zone of risk. The question presented here is whether this court should find that a law enforcement agency creates a zone of risk when the agency tests a person's DNA. To create a zone of risk, one of two factors must be present. The law enforcement agency must either (1) place the injured party in danger, or (2) create a special relationship with the injured party.
Regarding the first factor, a zone of risk can be created by detaining a person "or otherwise subjecting them to danger." Id.; see also, Moore v. Fish and Wildlife Conservation Comm'n, 861 So.2d 1251 (Fla. 1st DCA 2003). In my view, testing a person's DNA, fingerprints, blood, hair, or other related evidence does not place that person in danger. As to the second factor, this court has held that "a special relationship may arise between the governmental entity and the tort victim where the conduct of the governmental entity creates a foreseeable zone of risk." Sams v. Oelrich, 717 So.2d 1044, 1047 (Fla. 1st DCA 1998). I do not find that FDLE creates a "special relationship" with a person by testing DNA. FDLE does not promise a certain result or that no mistakes will occur during the test. FDLE simply exercises its police powers and seeks information that may be inculpatory or exculpatory.
FDLE's duty to perform DNA analysis is a general duty owed to the public as a whole, not to individuals. Where there is a general duty to protect the public, there is no duty of care to an individual citizen. See Layton v. Fla. Dep't of Highway Safety and Motor Vehicles, 676 So.2d 1038 (Fla. 1st DCA 1996). In Layton, this court held that the State had no duty of care to an individual arrested on incorrect driver's license information. This court stated that "for governmental liability to exist, there must be an underlying statutory or common law duty of care. . . . We conclude that the maintenance of DHSMV records is a function undertaken by the government for the public generally and that the duty to perform this function accurately runs to the public and not to individual licensed drivers. Accordingly, we hold that the state has no common law or statutory duty to Layton to accurately maintain motor vehicle records." Id. at 1040-1041 (citations omitted). I believe the same rationale applies here: the duty of FDLE to test and analyze an alleged suspect's DNA is a duty that "runs to the public," not Appellant, because the test is conducted for the public's benefit.
FDLE's charge regarding DNA analysis is to test such evidence and provide the results to a variety of users. § 943.33, Fla. Stat. (2003). The rationale for this state program is public safety; FDLE aids in the identification of perpetrators and the exclusion of alleged suspects whose profiles are not confirmed by the DNA test. DNA analysis is not performed for the benefit of Appellant or any other individual.
FDLE asserts that its action in testing Appellant's DNA during the investigation of alleged criminal conduct was immune because the action occurred during the exercise of FDLE's statutory police powers. *332 I agree with FDLE's analysis. In State v. Kowalski, 617 So.2d 1099 (Fla. 5th DCA 1993), the plaintiff was awarded damages for the alleged negligence of the state attorney's investigator which resulted in unfounded criminal charges. The Fifth District correctly stated that the state attorney owed no legal duty to the plaintiff "arising out of its duty to enforce the laws and protect the public safety." Id. at 1100. This case presents a similar question: whether FDLE's investigation of Appellant, through DNA testing, should expose the agency to a negligence suit after Appellant is acquitted.
I respectfully disagree that the case of Ragsdale v. Mount Sinai Medical Center, 770 So.2d 167 (Fla. 3d DCA 2000), is on point. Ragsdale involved a private laboratory which conducted a drug test on a law enforcement officer. The test was not performed to determine whether a crime had occurred, but merely to determine whether a person's employment should be terminated. In my view, there is a significant difference between a law enforcement agency conducting a test as part of a criminal investigation and a private laboratory conducting a test to assist an employer. Although the test results were used to terminate Appellant's employment, the test was conducted as part of a criminal investigation.
This appears to be a case of first impression which now establishes that law enforcement agencies are liable for inaccurate analysis of DNA and, I submit, any other similar analysis, such as fingerprints, blood types, and other physical evidence. I would recede from Hines and affirm the lower court's ruling on the basis that FDLE does not owe a duty of care to Appellant.