WELLS, Judge.
We grant the instant petition requesting certiorari review of an order denying Miami-Dade County’s motion to dismiss on sovereign immunity grounds, and write to clarify this court’s jurisdiction to entertain such petitions.

The Duty-Sovereign Immunity Analysis

In Miami-Dade County v. Fente, 949 So.2d 1101 (Fla. 3d DCA 2007), this court granted relief on a petition for writ of certiorari to review an order denying dismissal of an action on sovereign immunity grounds. There, the plaintiffs claimed that they were damaged because of a negligent police investigation:
The Fentes’ single count complaint seeks damages from the County stem *1215 ming from [a] burglary claiming that the County “by and through the actions of its officer, is guilty of misfeasance in carrying out the operational duty owed to the Plaintiffs in following the preexisting County burglary response policy in a reasonable fashion ... commensurate with the duty that would be owed by a private person to the Plaintiffs under the same circumstances.” According to the Fentes, the officer’s negligent investigation: (1) “created a broader zone of risk” to both them and their son, who arrived home from school after the burglars had left, and to their property, by affording the burglars “unlimited access” to their home; and (2) directly and proximately caused their loss of personal property valued at $150,000 and damage to the interior of their home.
Id. at 1103.
Equating the lack of duty of care and, thus, the absence of liability with immunity from suit, we quashed the order on review. See also Miami-Dade Cnty. v. Miller, 19 So.3d 1037 (Fla. 3d DCA 2009) (similarly concluding on certiorari review from an order denying summary judgment on a sovereign immunity claim, that the absence of duty equated with immunity from suit).
In Wallace v. Dean, 3 So.3d 1035, 1044 (Fla.2009), the Florida Supreme Court clarified the distinction between lack of duty and, thus, non-liability “as a matter of law,” and sovereign immunity:
As an initial point of departure, brief clarification is necessary concerning the differences between a lack of liability under established tort law and the presence of sovereign immunity. When addressing the issue of governmental liability under Florida law, we have repeatedly recognized that a duty analysis is conceptually distinct from any later inquiry regarding whether the governmental entity remains sover-eignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes.
(Footnote omitted).
As the Court explained, “the absence of a duty of care renders the defendant nonliable as a matter of law because his, her, or its actions are ... nontortious vis-á-vis the plaintiff.” Id. at 1045. Thus, where no duty of care is owed with respect to the alleged negligent conduct at issue, there can be no governmental liability and the question of whether the sovereign should be immune from suit need not be addressed. However, where a duty of care exists, a determination must be made as to whether sovereign immunity bars suit for the alleged breach:
“If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached. However, if a duty of care is owed, then it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty.”
Id. at 1044 (quoting Pollock v. Fla. Dep’t of Highway Patrol, 882 So.2d 928, 932-33 (Fla.2004)) (citations omitted).[1]
In Fente and Miller, the single issue raised was lack of duty and, thus, nonliability for allegedly tortious action. *1216 By equating the issue of liability with a determination as to whether the sovereign was immune from suit, we accepted jurisdiction in those cases. As stated on more than one occasion, certiorari jurisdiction is not usually exercised to review orders denying motions to dismiss or for summary judgment — orders which ordinarily relate to liability — because irreparable harm cannot be demonstrated as review may be had at the end of the case. See Fieselman v. State, 566 So.2d 768, 770 (Fla.1990) '(stating that certiorari review may not ordinarily be had of an order denying a motion to dismiss because an eventual plenary appeal from the final judgment is available); Brown & Williamson Tobacco Corp. v. Carter, 680 So.2d 546, 547 (Fla. 1st DCA 1996) (“[Pjetitioners have not shown an injury which cannot be remedied on appeal from a final order. Denial of a motion for summary judgment or a motion to dismiss will not be reviewed through certiorari for this reason. See Vanco Constr., Inc. v. Nucor Corp., 378 So.2d 116 (Fla. 5th DCA 1980); Johnson v. Henningson, 370 So.2d 60 (Fla. 4th DCA 1979), cert. denied and appeal dismissed, 383 So.2d 1196 (Fla.1980).”). It was only by equating tort liability with immunity from suit that we accepted jurisdiction in Fente and later in Miller. See Wallace, 3 So.3d at 1045 (referring to Fente as “conflating the issue of whether the government owes the plaintiff a duty of care with the separate, distinct issue of whether the doctrine of sovereign immunity shields the government from tort liability”). We will, therefore, like our sister courts, no longer exercise our certio-rari jurisdiction to review orders either denying motions to dismiss or denying motions for summary judgment where the sovereign argues that it is not liable as alleged because no duty can be demonstrated. See Fla. A & M Univ. Bd. of Trs. v. Thomas, 19 So.3d 445, 446 (Fla. 5th DCA 2009) (concluding that the court lacked jurisdiction to entertain certiorari review from a motion for summary judgment claiming sovereign immunity); Pinellas Suncoast Transit Auth. v. Wrye, 750 So.2d 30 (Fla. 2d DCA 1996) (“We conclude that we do not have jurisdiction to review the denial of the motion to dismiss based on sovereign immunity either as a nonfinal appeal or as a certiorari proceeding”).
We cannot, however, join our sister courts in refusing, on jurisdictional grounds, to entertain all writs from denials of motions to dismiss or for summary judgment on sovereign immunity grounds.[2] Governmental immunity, as the Florida Supreme Court has repeatedly confirmed, “derives entirely from the doctrine of separation of powers,” making it improper for the judiciary to intervene in fundamental decision making of the executive and legislative branches of the government. Kaisner v. Kolb, 543 So.2d 732, 736-37 (Fla.1989); Trianon Park Condo. Ass’n v. City of Hialeah, 468 So.2d 912, 918 (Fla.1985). This immunity finds its roots in medieval England and springs from the concept that the sovereign cannot be sued in its own courts. This doctrine was accepted by the United States government and was inter *1217 preted by the United States Supreme Court as meaning that the government is immune from suit absent its consent. While the sovereign could not be sued in its own courts, the sovereign’s ministers could be petitioned for a waiver to secure relief. Thus, historically, the state of Florida and its counties were immune from all suits until the legislature enacted section 768.28 expressly “waiv[ing] sovereign immunity for liability for torts”:
Sovereign immunity’s roots extend to medieval England. The doctrine flows from the concept that one could not sue the king in his own courts; hence the phrase “the king can do no wrong.” The United States government fully accepted the sovereign immunity doctrine in Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), in which Chief Justice Marshall declared that no suit could be commenced or prosecuted against the United States without its consent. Id. at 411-12. Later, Justice Holmes explained: “A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.” Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907). The majority of American states fully embraced the sovereign immunity theory as well as the federal government. See Restatement (Second) of Torts s 895B, comment a at 400 (1979). Thus the general rule was that state governments, their agencies, and their subdivisions could not be sued in state courts without state consent.
... [Ajlthough suit against the king did not lie, one injured by the king’s ministers could always petition the king directly for relief. In modern time, our legislative bodies are vested with the authority to grant relief for governmental wrongs through waiver of immunity.... The people of Florida vested the power to waive immunity in the Florida legislature at an early date. See art. IV, s 19, Fla. Const. (1868) (now art. X, s 13, Fla. Const.). The Florida legislature did not exercise this authority until 1973 when it enacted section 768.28. Ch. 73-313, s 1, Laws of Fla.
Common law sovereign immunity for the state, its agencies, and counties remained in full force until section 768.28’s enactment.
Cauley v. City of Jacksonville, 403 So.2d 379, 381 (Fla.1981).
Thus, statutory waiver of immunity for tort liability aside, those “functions of government [that] are inherent in the act of governing [remain] immune, from suit.” Trianon, 468 So.2d at 918 (emphasis added). As the supreme court in Wallace most recently confirmed, “the presence of sovereign immunity ... simply means that the State has not consented to suit in its courts with regard to certain claims”:
[A] duty analysis is conceptually distinct from any later inquiry regarding whether the governmental entity remains sovereignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes. See, e.g., Pollock v. Fla. Dep’t of Highway Patrol, 882 So.2d 928, 932-33 (Fla.2004) (‘If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached.’” ).... [SJovereign immunity may shield the government from an action in its courts (i.e., a lack of subject-matter jurisdiction) even when the State may otherwise be liable *1218 to an injured party for its tortious conduct. In other words, the presence of sovereign immunity does not render the State’s actions nontortious (it simply means that the State has not consented to suit in its courts with regard to certain claims).
• • • “[governmental immunity derives entirely from the doctrine of separation of powers, not from [the absence of] a duty of care or from any statutory basis.”
[[Image here]]
“Clearly, the [Legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are 'acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing.”
[[Image here]]
... [W]e now turn to the question of whether sovereign immunity bars this action.... See, e.g., Pollock, 882 So.2d at 933 (“[I]f a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty.”).... “Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy.” Commercial Carrier, 371 So.2d at 1021 (emphasis supplied). This distinction “requires us to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision.” Id. at 1021 (emphasis supplied) (quoting Johnson v. State, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352, 360-61 (1968)). Functionally, the discretionary-versus-operational-function test is intended “to determine where, in the area of governmental processes, orthodox tort liability stops and the act of governing begins.” Commercial Carrier, 371 So.2d at 1018.
To aid us in addressing this issue, we have adopted a group of four related questions. See Commercial Carrier, 371 So.2d at 1019 (adopting the four-part test outlined in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1965)). If each of these questions may be “clearly and unequivocally” answered in the affirmative, then “the challenged act, omission, or decision” is likely discretionary in nature and immune from a tort action; whereas, if any one of the questions may be answered in the negative, further inquiry is necessary to determine whether, under the circumstances, the question of tort liability will or will not entangle the Court in a nonjusticiable political question that is more appropriately committed to the resolution of a coordinate or constituent branch of government (e.g., the Legislature, the executive branch, or a county or municipality). Commercial Carrier, 371 So.2d at 1019; cf. also Johnson v. State, 660 So.2d 637, 646 (Fla.1995) (“[PJolitical questions-as opposed to legal questions-fall within the exclusive domain of the legislative and executive branches under the guidelines established by the Florida Constitution. Art. II, § 3, Fla. Const.”); Black’s Law *1219 Dictionary 1197 (8th ed. 2004) (“political question. A question that a court will not consider because it involves the exercise of discretionary power by the executive or legislative branch of government.”)”
Wallace, 8 So.3d at 1044-45, 1048 n. 19, 1053-54 (some citations omitted) (footnote omitted) (some emphasis added).
Relying on these statements, we conclude that in cases where immunity from suit rather than solely immunity from liability is at issue, our intervention by way of certiorari is appropriate.[3] In reaching this conclusion, we acknowledge that because the nature of the conduct involved determines whether the function being performed “is, by its nature, immune from tort liability,” Trianon, 468 So.2d at 918, and that “[o]ftentimes, the applicability of the sovereign immunity waiver is inextricably tied to the underlying facts,” Roe, 679 So.2d at 758, a trial on the merits may be required to resolve the immunity issue. However, in those cases in which the conduct and function at issue clearly do not fall within the tort liability waiver, we believe that we should exercise our jurisdiction to preclude prosecution of an action where the sovereign remains immune from suit.

The Instant Case

The complaint in this case challenges the response of two Miami-Dade County patrolmen to a burglary in progress at an automotive detailing business at the corner of Bird Road and Eighty-eighth Place in Miami-Dade County, on February 14, 2008, just before midnight. By any lay measure, these officers were responding to an emergency. Moments after Officer Jesus Hernandez hopped out of the passenger side of his moving police cruiser as his partner, Javier Albides, skidded around the corner onto Eighty-eighth Place, he saw the burglar through the front window of the store. In the same instant, the plaintiff store owner, Lazaro Rodriguez, having been alerted by the alarm company, careened into the parking lot in front of the store in his pickup truck. The next few seconds would change Rodriguez’s life forever. Rodriguez jumped out of the truck, revolver in hand. Officer Hernandez, running from his jump-off point in the middle of Eighty-eighth Place toward the storefront to apprehend the burglar, encountered Rodriguez from behind. Rodriguez turned and pointed his gun toward Officer Hernandez. Officer Hernandez, weapon also in hand, shot Rodriguez four times, severely injuring him. The shooting was captured on a store videotape. Not more than thirteen seconds elapsed from the moment the police arrived to the time the last shot was fired. Officer Al-bides was not on or near the business premises at the time of the shooting, but instead was pursuing two other subjects he saw as he rounded the corner.
Rodriguez’s challenge to the actions of the officers in this case, most prominently the conduct of Officer Hernandez that resulted in Rodriguez’s injuries, is by way of a complaint sounding in common law negligence. He alleges the County’s police officers should have responded in a different manner to the emergency situation, and should have conducted a more extensive investigation before intervening. As Rodriguez’s counsel characterizes it, “Hernandez responded recklessly to the scene of the burglary alarm, violated basic police *1220 safety procedures and negligently caused a situation which resulted in the use of deadly force against an innocent civilian.” Notably, Rodriguez does not allege either a constitutional violation or an intentional act by these officers. Rather, he confines his complaint to a claim of negligence, and then only against Miami-Dade County.
Rodriguez, while acknowledging that the State and its political subdivisions are sov-ereignly immune from suit for torts committed by their employees within the scope of their employment except where the immunity has been expressly waived, argues the 1996 decision of the Florida Supreme Court in Department of Education v. Roe, 679 So.2d 756 (Fla.1996), should be read to preclude interlocutory review of such an order by certiorari as well. In support of this argument, Rodriguez cites the following passage, wherein the Florida Supreme Court opined that the State has a lesser need for an avenue for immediate, plenary review of an interlocutory order denying it immunity from suit than does a public official:
[F]orcing the state to wait until a final judgment before appealing the issue of sovereign immunity does not present the same concerns that exist in the area of qualified immunity [for public officials]. For example, public officials who defend tort suits against the state are not sued in their personal capacities. As a result, defending these suits is not likely to have a chilling effect on the exercise of public officials’ discretion in the discharge of their official duties. In addition, .although the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply because review must wait until after final judgment. See Alaska v. United States, 64 F.3d [1352,] 1355-56 [ (9th Cir.1995) ]; Pullman [Constr. Indus., Inc. v. United States], 23 F.3d [1166,] 1168 [(7th Cir.1994) ].
Roe, 679 So.2d at 759 (emphasis added). Based upon this passage, Rodriguez argues the County is, a fortiori, not irreparably harmed by a denial of the petition. The argument is a non sequitur.
First, Rodriguez misreads Roe. Roe did not determine the availability of discretionary jurisdiction. Instead, Roe simply declined the State’s invitation to extend the same right of interlocutory appeal from orders denying immunity from suit to the state and its political subdivision as the court had extended to its employees acting in the scope of their employment. Id. Second, neither a lesser burden nor the fact the County could be immunized after the entry of a final judgment answers the irreparable harm question. If the County is entitled to immunity from suit, it is the trial itself that constitutes the harm. See Cedars Healthcare Grp., Ltd. v. Mehta, 16 So.3d 914, 917 (Fla. 3d DCA 2009) (“Since subsection 395.0193(5) [affording immunity from suit to licensed hospital facilities and related groups for “any action taken without intentional fraud”] provides for immunity from suit, the denial order can be reviewed by way of certiorari at this time.”). At this point, the County is ineluctably faced with a trial in this case.[4]
*1221 As stated above, the immunity issue in this case is predicated on the doctrine of separation of powers. That principle is distinct from immunity resting on the sovereign character of the state or municipality in the performance of its governmental functions. The focus of a separation of powers analysis is on the nature of government conduct and the government category into which the particular activity falls. It is animated by the continuing need at all levels of government to preserve the pattern of distribution of governmental functions prescribed by the constitution and statute. See Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260, 263 (Fla.1991) (melodramatically but meaningfully quoting Charles de Montesquieu’s L’Espirt des Lois 70 (Robert M. Hutchins ed., William Benton 1952) (1748), “[t]here would be an end of everything, were the same ... body ... to exercise those three powers, that of enacting laws, that of executing the public resolutions, and of trying the causes of individuals”). Recognizing the importance of this fundamentally prescribed structure at every level of government, our high court wisely concluded in the seminal case construing the scope of the waiver of immunity from suit in section 768.28 that certain functions of the legislative and executive branches of our local governments may not be made subject to scrutiny by a judge or jury as to the wisdom of performance. See Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010 (Fla.1979).
The question of whether a specific government activity or type of conduct is one to which this separation principle applies is a question the courts of this state never seem to stop addressing. However, the Florida Supreme Court has created a clear exception for police action in emergency situations. City of Pinellas Park v. Brown, 604 So.2d 1222, 1226-27 (Fla.1992) (citing Kaisner v. Kolb, 543 So.2d 732, 738, n. 3 (Fla.1989)) (“Kaisner specifically noted that special deference is given to pressing emergencies, and that certain police actions may involve a level of such urgency as to be considered discretionary and not operational.”). As the court explained in Pinellas Park:
To fall within the Kaisner exception, the serious emergency must be one thrust upon the police by lawbreakers or other external forces, that requires them to choose between different risks posed to the public. In other words, no matter what decision police officers make, someone or some group will be put at risk; and officers thus are left no option but to choose between two different evils. It is this choice between risks that is entitled to the protection of sovereign immunity in appropriate cases, because it involves what essentially is a discretionary act of executive decision-making.
Pinellas Park, 604 So.2d at 1227 (footnote omitted).
In the present case, the undisputed facts show that (a) a serious emergency existed, (b) the emergency was thrust upon the police by the acts of others, and (c) Officers Hernandez and Albides were required to make split-second choices that could result in harm either way. Rodriguez argues the burglary was not a serious emergency, but rather a property crime out of which the officers created an emergency by ignoring police policies and procedures. We disagree. Burglary is a forcible felony, see § 776.08, Fla. Stat. (2011), that, by its nature—illustrated by the fact Rodriguez himself emerged from his vehicle carrying a firearm-is a serious emergency which poses a level of danger to members of the public. In this case, *1222 the officers elected to seek to apprehend the burglars before they could harm Rodriguez or anyone else. Rodriguez argues the officers should have waited and reeon-noitered before intervening. It is his supposition that such a decision would have been “more consistent” with his safety.
We, of course, do not know whether Rodriguez’s supposition is true. Here the officers decided immediate intervention was the appropriate course. Rodriguez’s shooting by an officer of the law is regrettable. Yet who can say whether it would have been safer for Rodriguez to have been left to his own devices while the officers reconnoitered and planned? If that had been the case, could not Rodriguez allege just as well that course of action was negligent? Courts rightfully afford special deference to police officers’ conduct in pressing emergencies, such as the one presented to us. Pinellas Park, 604 So.2d at 1227 (“Deference will be shown to the reasonable decisions of law officers to maintain pursuit of certain offenders who are reasonably thought to be violent or to pose a danger to the public at large.”). No matter what choices the police officers made in this case, someone or some group would be put at risk. This is the type of fundamental law enforcement decision, about which courts in this state have consistently said should be left to the expertise of law enforcement rather than being put to a referendum by the courts and juries. See Robles v. Metro. Dade Cnty., 802 So.2d 453 (Fla. 3d DCA 2001) (concluding county sovereignly immune from negligence suit by parents of minor child injured by flying debris caused by police officer who elected to shoot school bus hijacker); Seguine v. City of Miami, 627 So.2d 14, 19 (Fla. 3d DCA 1993) (finding after the fact criticism of whether police failed to follow fundamental law enforcement policies in failed attempt to arrest suicidal suspect found “best ... left to the discretionary judgment of the police without entangling the courts through our tort law in such fundamental law enforcement policies — even where, as here that judgment might in hindsight be arguably faulted either in whole or in part”); but see Wallace, 3 So.3d at 1045 (questioning reasoning of Seguine); see also Trianon, 468 So.2d at 919 (“Th[e] discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials .... ” (citing Commercial Carrier, 371 So.2d at 1015 (recognizing that “[not] all acts or omissions by governmental authorities will subject them to liability in tort under ... [section 768.28]”)); Everton v. Willard, 468 So.2d 936, 939 (Fla.1985) (approving trial court’s dismissal on ground of governmental immunity of action filed against sheriffs office for deputy’s alleged negligent failure to arrest obviously intoxicated motorist who crashed into victim’s vehicle fifteen minutes later); see also Wong v. City of Miami, 237 So.2d 132, 134 (Fla.1970) (stating on denial of certiorari review of negligence action brought by merchants whose property was damaged in connection with civil disorder after sheriff allegedly carelessly and negligently removed officers in attempt to reduce tensions, “inherent in the right to exercise police powers is the right to determine strategy and tactics for deployment of those powers”); Smith v. City of Plantation, 19 F.Supp.2d 1323, 1333 (S.D.Fla.1998), aff'd, 198 F.3d 262 (11th Cir.1999) (noting that the “four-prong” analysis developed in Commercial Carrier, 371 So.2d at 1019, customarily used as a guide to determine the existence or non-existence of governmental immunity from suit does not apply to “police *1223 action in emergency situations”). There will be occasions where the applicability of the sovereign immunity doctrine is so inextricably tied to the underlying facts that factual development, up to and sometimes including a trial on the merits, is necessary to resolve the immunity issues. However, this is not one of those cases.
For the foregoing reasons, we exercise our jurisdiction to preclude prosecution as the sovereign remains immune from this suit and we grant the petition. In recognizing our jurisdiction to entertain, where appropriate, certiorari jurisdiction where a governmental entity’s claim is that it remains immune from suit, rather than that it is not hable for lack of duty, we certify conflict with the decisions in Florida A & M University Board of Trustees v. Thomas, 19 So.3d 445, 446 (Fla. 5th DCA 2009), and Pinellas Suncoast Transit Authority v. Wrye, 750 So.2d 30 (Fla. 2d DCA 1996).
Certiorari granted; conflict certified.

. It is for this reason, that is, that it could not be discerned from the record that no duty existed, that certiorari review was denied in School Board of Miami-Dade County v. Leyva, 975 So.2d 576 (Fla. 3d DCA 2008) (expressly relying on Dep't of Ed. v. Roe, 679 So.2d 756, 758 (Fla.1996) (stating "[ojftentimes, the applicability of the sovereign immunity waiver is inextricably tied to the underlying facts, requiring a trial on the merits”)).

. The Thomas court, in a single-paragraph summary opinion, denied certiorari relying on Department of Education v. Roe, 679 So.2d 756 (Fla.1996), and this court’s decision in Leyva. The Wrye court, in a two paragraph summary opinion, similarly denied certiorari. As already noted, our decision in Leyva turned on an inability to discern whether a duty or immunity existed and is therefore inapposite fiere. Roe dealt with whether a Rule 9.130 nonfinal appeal could be prosecuted from an order denying a motion to dismiss on sovereign immunity grounds. There, the court distinguished the immunity from suit accorded to public officials which is effectively forfeited if trial is permitted, from the immunity from liability accorded to the sovereign, an immunity not lost if trial is permitted.

. See Roe, 679 So.2d at 758 (confirming that an immunity from suit as opposed to an immunity from liability " ‘is effectively lost if a case is erroneously permitted to go to trial.' ” (quoting Tucker v. Resha, 648 So.2d 1187, 1189 (Fla.1994) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))).

. It is the imminent threat or existence of irreparable harm that gives us jurisdiction in this case. See Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995); see also State Farm Fla. Ins. Co. v. Seville Place Condo. Ass'n, — So.3d —, at —, 2011 WL 2905642 (Fla. 3d DCA 2011) (Shepherd, J., concurring); Bd. of Regents v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002) (recognizing that a defendant claiming qualified or sovereign immunity would suffer material harm, irreparable on appeal after judgment, if the defendant were required to go to trial because the *1221 defendant could not later be re-immunized from suit).