RAY, J.
City of Freeport, Florida (the “City”) petitions for a writ of certiorari to review a non-final order denying the City’s motion to dismiss a negligence action brought against it in circuit court by Beach Community Bank (the “Bank”). Because we conclude that the City has sovereign immunity from suit, we grant the petition.

I. Factual Allegations

In March 2006, the City issued a development order to Riverwalk Freeport, LLC, a developer of real estate within the city limits. The name of the proposed residential development at issue is River-walk Phase I. Article 2, section 2.01.05(I)(2)(d) of the City’s Land Development Code (LDC) expressly provides that a final development order may require a developer to post bond equal to 110% of the costs of the services or facilities that a developer is required to construct for the benefit of the project, as security to ensure completion of the infrastructure. Article 2, section 2.01.05(N)(3)(a) of the LDC states: “The amount of the security listed in the improvement agreement shall be approved as adequate by the Code Enforcement Officer.” In the instant case, security could be fully satisfied-in several ways, including the developer’s posting an irrevocable letter of credit with the City. In compliance with the LDC, the developer provided the City with an irrevocable standby letter of credit loan in the amount of approximately $4.87 million from DC Capital DC Banking Group (DC Capital) in July 2007. The City Planner wrote the developer that the “surety [was] acceptable to the City.”
In June 2008, nearly a year after the City approved the Riverwalk project for development, the Bank made a $2.4 million loan to the developer. The Bank secured this loan with a mortgage against twenty of the platted lots in the Riverwalk subdivision. The developer failed to complete the infrastructure and, in 2009, Petitioner attempted to collect on the security. The DC Capital letter of credit ultimately proved to be fraudulent and/or uncollecta-ble.
Thereafter, the Bank sued the City, alleging that the City had breached its duty to 1) ensure that the developer posted adequate security for completion of the infrastructure, 2) conduct a reasonable investigation to ascertain the authenticity and adequacy of the letter of credit, and 3) determine whether DC Capital was a legitimate business enterprise and, if so, was financially able to pay the letter of credit if it was called.
The City moved to dismiss the complaint for failure to state a cause of action on the grounds that the City owed the Bank no common-law, statutory, or special duty of *687 care, but even if a duty existed, the decisions at issue were policy-making, planning-level functions for which the City is immune from suit. The circuit court denied the motion to dismiss and directed the City to file a responsive pleading. The City seeks review of this non-final order.

II. Jurisdictional Analysis

Article V, section 4(b)(3) of the Florida Constitution, provides that district courts of appeal have original jurisdiction to issue writs of certiorari. See also Fla. R.App.P. 9.030(b)(2)(A). “Certiorari is the proper remedy, in limited circumstances, to review a non-final order that is not subject to appeal under Florida Rule of Appellate Procedure 9.130.” AVCO Corp. v. Neff, 30 So.3d 597, 601 (Fla. 1st DCA 2010). The authority of the district courts to issue writs “functions as a safety net and gives the upper court the prerogative to reach down and halt a miscarriage of justice where no other remedy exists.” Broward Cnty. v. G.B.V. Int’l, Ltd., 787 So.2d 838, 842 (Fla.2001). Certiorari review is not a mechanism for piecemeal appellate review as a matter of right; instead, it is triggered on a case-by-case basis, upon a showing by petitioner that the order under review (1) constitutes a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be remedied on post judgment appeal. Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011). Because the last two elements are jurisdictional, we must analyze them first. Id.
Sovereign immunity, which is the basis for the City’s motion to dismiss, derives exclusively from the separation of powers provision found in article II, section 3 of the Florida Constitution.[1] Wallace v. Dean, 3 So.3d 1035, 1045 (Fla.2009). Other policy considerations underpinning the doctrine of sovereign immunity include the “protection of the public treasury” and the “maintenance of the orderly administration of government.” Am. Home Assur. Co. v. Nat’l R.R. Passenger Corp., 908 So.2d 459, 471 (Fla.2005). Sovereign immunity prohibits the judiciary from “second guess[ing] the political and police power” decisions of coordinate branches of government “absent a violation of constitutional or statutory rights.” Trianon Park Condo. Ass’n v. City of Hialeah, 468 So.2d 912, 918 (Fla.1985). While the Florida Legislature has codified a limited waiver of sovereign tort immunity in section 768.28, Florida Statutes, the doctrine of separation of powers mandates that “certain [quasi-legislative] policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability.” Wallace v. Dean, 3 So.3d at 1053 (citing Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010, 1020 (Fla.1979)). Accordingly, where governmental actions are deemed discretionary, as opposed to operational, the government has absolute immunity from suit. See Commercial Carrier Corp., 371 So.2d at 1020-22.
The erroneous denial of sovereign immunity has been held to be a material, irreparable injury to justify certiorari review. See Miami-Dade Cnty. v. Rodriguez, 67 So.3d 1213, 1219 (Fla. 3d DCA 2011), rev. granted, 76 So.3d 938 (Fla. Dec. 1, 2011).[2] This holding in Rodriguez is *688 consistent with the host of cases where certiorari jurisdiction was properly invoked to review trial court orders denying other types of immunities from suit.[3] The reasoning underlying these decisions is that if the defendant is entitled to immunity from suit, it is the trial itself that constitutes the material harm. See Tucker v. Resha, 648 So.2d 1187, 1189 (Fla.1994); Rodriguez, 67 So.3d at 1219-20 & nn. 3-4. This harm cannot be cured by plenary appeal because it is impossible to “reimmunize” the defendant from suit after the fact. Bd. of Regents v. Snyder, 826 So.2d at 387.
The Bank argues that the Florida Supreme Court’s decision in Department of Education v. Roe, 679 So.2d 756 (Fla.1996), precludes all avenues of interlocutory review of a non-final order denying sovereign immunity. On this point, we agree with the Third District Court of Appeal that Roe is inapplicable to discretionary review by certiorari where immunity is based on the separation of powers doctrine:
[Respondent] misreads Roe. Roe did not determine the availability of discretionary jurisdiction. Instead, Roe simply declined the State’s invitation to extend the same right of interlocutory appeal from orders denying immunity from suit to the state and its political subdivision as the court had extended to its employees acting in the scope of their employment.
* * *
[T]he immunity issue in this case is predicated on the doctrine of separation of powers. That principle is distinct from immunity resting on the sovereign character of the state or municipality in the performance of its governmental functions. The focus of a separation of powers analysis is on the nature of government conduct and the government category into which the particular activity falls. It is animated by the continuing *689 need at all levels of government to preserve the pattern of distribution of governmental functions prescribed by the constitution and statute.... Recognizing the importance of this fundamentally prescribed structure at every level of government, our high court wisely concluded in the seminal case construing the scope of the waiver of immunity from suit in section 768.28 that certain functions of the legislative and executive branches of our local governments may not be made subject to scrutiny by a judge or jury as to the wisdom of performance. See Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010 (Fla.1979).
Rodriguez, 67 So.3d at 1220-21 (some internal citations omitted). The instant case is also distinguishable from this Court’s decisions denying certiorari review in Citizens Property Insurance Corp. v. San Perdido Association, Inc., 46 So.3d 1051, 1053 (Fla. 1st DCA 2010) (involving a claim of immunity pursuant to section 627.351(6)(s)l., Florida Statutes), approved by Citizens Property Insurance Corp. v. San Perdido Association, Inc., 104 So.3d 344 (Fla.2012), and Keck v. Eminisor, 46 So.3d 1065 (Fla. 1st DCA 2010) (involving a claim of immunity from personal liability pursuant to section 768.28(9)(a), Florida Statutes), quashed in part by Keck v. Em-inisor, 104 So.3d 359 (Fla.2012) (concluding that a claim of immunity under section 768.28(9)(a), Florida Statutes, should be reviewable by a non-final appeal and declining to address the issue of whether a writ of certiorari would be an alternative avenue). Both of those cases involved the interpretation of limited, statutory grants of immunity; neither of them involved the application of traditional sovereign immunity like that claimed by the City in this case. The governmental immunity at issue here “derives entirely from the doctrine of separation of powers, not from [the absence of] a duty of care or from any statutory basis.”[4] Wallace, 3 So.3d at 1045 (emphasis and brackets in original).
Because the City claims immunity from suit, and the effect of the challenged order requires the City to submit to litigation beyond such time as its immunity can be properly determined, we conclude that the City has established the requisite material, irreparable harm necessary to invoke our certiorari jurisdiction.

III. Merits Analysis of Sovereign Immunity Claim

Having satisfied the jurisdiction threshold, the City next must establish that the challenged order departed from the essential requirements of law. When the record conclusively demonstrates an entitlement to sovereign immunity, a trial court departs from the essential requirements of law when it denies a motion to dismiss on that basis. In reviewing an order on a motion to dismiss, we assume the truth of all well-pled factual allegations *690 in the complaint and draw all reasonable inferences in favor of the pleader. Weaver v. Leon Cnty. Classroom Teachers Ass’n, 680 So.2d 478, 481 (Fla. 1st DCA 1996).
The Bank’s complaint alleged that, having adopted a provision in its LDC giving the City the authority to require the developer to post security to ensure completion of the Riverwalk development, and in fact having required such security in this case, the City negligently enforced its LDC by failing to conduct a reasonable investigation into the adequacy of the security posted by the developer. Specifically, the complaint alleged that the City was negligent by failing to conduct any investigation of DC Capital to determine the authenticity of the letter of credit and by further failing to investigate DC Capital’s financial ability to pay if the letter of credit was called.
To answer the question of whether sovereign immunity bars this action, it is necessary to determine whether the negligence alleged by the Bank relates to a discretionary or operational function of government. In this context, a “discretionary,” planning-level function involves “an exercise of executive or legislative power such that a court’s intervention by way of tort law would inappropriately entangle the court in fundamental questions of policy and planning.” Mosby v. Harrell, 909 So.2d 328, 328 (Fla. 1st DCA 2005). An “operational” function, on the other hand, “is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.” Dep’t of Health & Rehabilitative Servs. v. B.J.M., 656 So.2d 906, 911 n. 4 (Fla.1995); Mosby, 909 So.2d at 328. Operational decisions are not immune. Trianon Park Condo. Ass’n v. City of Hialeah, 468 So.2d at 924. “Functionally, the discretionary-versus-operational test is intended to determine where, in the area of governmental processes, orthodox tort liability stops and the act of governing begins.” Wallace, 3 So.3d at 1044 (internal quotations omitted).
The City asserts it is immune from suit because its decisions concerning how it allocates its resources, enforces its laws, and protects the public are matters usually protected from judicial interference. See Trianon Park Condo. Ass’n, 468 So.2d at 918-20 (“[C]ertain discretionary functions of government are inherent in the act of governing and are immune from suit.”). In Carter v. City of Stuart, 468 So.2d 955, 957 (Fla.1985), the Florida Supreme Court held that a city’s discretionary choice to enforce laws, including the priority and manner of enforcement, is a planning-level, judgmental decision for which the government is immune from liability. Applying this principle to the facts of the case, the Carter court determined that the amount of resources and number of employees to be allocated to the enforcement of an “animal control” ordinance were municipal “policy decisions” over which the city had the right to set priorities regarding whether or not to enforce its ordinance. Id.
By analogy to Carter, the City, as the sovereign, asserts its right to enforce its own LDC, to enforce it partly, or not to enforce it at all. The City had the right to decide what level of compliance was sufficient and how much, if any, of its limited resources should be allocated to enforcing compliance by a developer putting up security for an approved development. See City of Delray Beach v. St. Juste, 989 So.2d 655, 655-57 (Fla. 4th DCA 2008) (concluding that, given the government’s limited funds and space to impound animals, the decisions of the city’s animal-control officer and the police not to impound certain unfenced dogs that were the subject of complaints were discretionary functions for which the city enjoyed immunity); Dep’t of Corr. v. Grubbs, 884 So.2d *691 1147-48 (Fla. 2d DCA 2004) (granting petition for writ of certiorari and quashing order directing DOC to pay for a sex offender’s treatment); Elliott v. City of Hollywood, 899 So.2d 507, 508-09 (Fla. 4th DCA 1981) (concluding that the city’s alleged negligent failure to enforce its ordinance, which was intended to prevent homeowners from landscaping their property in any way that interfered with motorists’ vision, was a planning-level decision, not an operational one, and affirming the dismissal with prejudice of a complaint against the city).
As a matter of policy, the City had the right to decide it would require developers to post security. In so doing, the LDC obliged the City to approve as adequate the amount of the security, which is calculated based on the criterion expressed in the LDC. The Bank does not challenge the amount of the security posted. The City’s decision that receipt of a written guarantee of security was sufficient compliance with the LDC falls within a municipality’s inherent, fundamental policy-making authority. Regardless of its wisdom, the City’s decision not to dedicate resources towards fraud prevention by investigating the authenticity of the security or the financial solvency of its backer, was a policy decision that we are not permitted to second-guess.[5]

Conclusion

If sovereign immunity is to be meaningful — and if we are to respect the fundamental tenets of the separation of powers — the City is entitled to certiorari review to determine whether it is immune from suit. Because the Bank’s allegations of negligence concerned a discretionary, planning-level policy decision of the sovereign, we conclude that such immunity exists and the circuit court departed from the essential requirements of law in denying the motion to dismiss. For these reasons, we exercise our jurisdiction to preclude further trial proceedings against the City.
Petition granted; order quashed.
PADOVANO and ROWE, JJ., concur.

. Article II, section 3 of the Florida Constitution provides that: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.”

. In so holding, the Third District certified conflict with Florida A & M University Board *688 of Trustees v. Thomas, 19 So.3d 445 (Fla. 5th DCA 2009) (denying certiorari review), and Pinellas Suncoast Transit Authority v. Wrye, 750 So.2d 30 (Fla. 2d DCA 1996) (denying certiorari review). Rodriguez, 67 So.3d at 1223.

. See Fla. State Univ. Bd. of Tr. v. Monk, 68 So.3d 316, 318 (Fla. 1st DCA 2011) (granting certiorari and quashing trial court order erroneously denying university immunity from defamation complaint "because absolute immunity protects a party from having to defend a lawsuit at all, and waiting until final appeal to review an order denying dismissal on immunity grounds renders such immunity meaningless if the lower court denied dismissal in error.”); Fuller v. Truncale, 50 So.3d 25, 28 (Fla. 1st DCA 2010) (granting certiorari and quashing trial court order erroneously denying judicial immunity "[bjecause judicial immunity is intended to prevent a judicial party from becoming involved in a lawsuit, it would be compromised, and irreparable harm sustained, simply by forcing a judicial party to become involved in litigation, irrespective of its outcome.”) (footnote omitted); Cedars Healthcare Grp., Ltd. v. Mehta, 16 So.3d 914, 917 (Fla. 3d DCA 2009) (granting certiorari in part and quashing trial court order erroneously denying immunity from suit pursuant to section 395.0193(5), Florida Statutes); Seminole Tribe of Fla. v. McCor, 903 So.2d 353, 357-58 (Fla. 2d DCA 2005) (granting certiora-ri and quashing trial court order erroneously denying tribal sovereign immunity "because the inappropriate exercise of jurisdiction by a trial court over a sovereignly-immune tribe is an injury for which there is no adequate remedy on appeal. Tribal sovereign immunity ... involves immunity from suit rather than a mere defense to liability, which is an entitlement that is effectively lost if a case is erroneously permitted to go to trial.”) (citations and quotation marks omitted); Bd. of Regents of State v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002) (granting certiorari and quashing trial court’s order erroneously denying claims of sovereign and qualified immunity, recognizing that if "[pjetitioners are required to go to trial, they cannot later be reimmunized from suit”).

. Immunity from suit, inherent in sovereign immunity, is a distinct concept from a lack of liability under established tort law. As explained by the Florida Supreme Court:
When addressing the issue of governmental liability under Florida law, we have repeatedly recognized that a duty analysis is conceptually distinct from any later inquiry regarding whether the governmental entity remains sovereignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes. Under traditional principles of tort law, the absence of a duty of care between the defendant and the plaintiff results in a lack of liability, not application of immunity from suit. Conversely, sovereign immunity may shield the government from an action in its courts (i.e., a lack of subject-matter jurisdiction) even when the State may otherwise be liable to an injured party for its tortious conduct.
Wallace, 3 So.3d at 1044 (internal citations and footnotes omitted).

. The City concedes that if it had adopted a policy to investigate, had undertaken the duty to do so, and had negligently performed the investigation, then such an undertaking may have been an operational function. No such policy is alleged in this case.