# Third District Court of Appeal

## State of Florida

Opinion filed June 6, 2018.

_____

No. 3D15-2167
Lower Tribunal No. 14-24237
_____

**Miami-Dade County,**
Appellant,

vs.

**Noel Pozos,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Abigail Price-Williams, Miami-Dade County Attorney, and Eric K. Gressman, Joni A. Mosely and Sabrina Levin, Assistant County Attorneys, for appellant.

Beckham & Beckham, P.A., and Robert J. Beckham, Jr., and Pamela Beckham, for appellee.

Before ROTHENBERG, C.J., and SUAREZ and EMAS, JJ.

ON MOTION FOR REHEARING, CLARIFICATION, OR CERTIFICATION

PER CURIAM.

Denied.

SUAREZ and EMAS, JJ., concur.

ROTHENBERG, C.J. (dissenting from the denial of the motion for rehearing and rehearing en banc).

Noel Pozos seeks damages for injuries he sustained as a result of being shot by an unidentified assailant while at a teenager's birthday party at Benito Juarez Park ("the Park") in Homestead, Florida. The one-count complaint alleges that Miami-Dade County ("the County") owned, controlled, maintained, and operated the park; Pozos was an invitee on the premises when he was shot; the County assumed the duty to provide reasonable safety to Pozos; and the County breached that duty by failing to provide reasonable safety measures and security personnel to control, patrol, and guard against dangerous activity and/or to warn Pozos and others of the potential danger.

The County filed a motion for summary judgment asserting that: (1) the County did not have a duty to prevent the misconduct of third persons or to enforce the law for the benefit of specific individuals; and (2) sovereign immunity bars this action. After conducting an evidentiary hearing, the trial court denied the County's motion for summary judgment.

The majority concludes that this Court lacks jurisdiction under rule 9.130(a)(3)(C)(xi) to review the trial court's order in the instant case because the trial court "did not declare, make a finding, or otherwise determine that, as a matter

3

of law, the County was not entitled to sovereign immunity or immunity under section 768.29(9)." I agree with the majority that, unless the trial court has determined as a matter of law that the County is not entitled to sovereign immunity, this Court lacks jurisdiction to review the trial court's order denying the County's motion for summary judgment. However: (1) I disagree with the majority's interpretation of rule 9.130(a)(3)(C)(xi); (2) the case law does not support the majority's position; (3) the majority's interpretation of the rule will lead to an absurd result; and (4) the record clearly establishes that sovereign immunity bars this action as a matter of law. Because the trial court's order denying the County's motion for summary judgment constituted a legal determination that the County was not entitled to sovereign immunity, we have jurisdiction to review and to reverse the trial court's order denying the County's motion for summary judgment. I, therefore, respectfully dissent from the majority opinion dismissing the trial court's order for lack of jurisdiction.

I am additionally writing to address the issuance of orders by some trial judges on motions to dismiss and motions for summary judgment based on sovereign immunity arguments which do not specify the basis for the denial, thereby frustrating the actual purpose behind the amendment to rule 9.130, which was to provide for interlocutory review of non-final orders that determine whether a party is sovereignly immune from suit as a matter of law.

4

## ANALYSIS

### I. Jurisdiction under rule 9.130(a)(3)(C)(xi)

I begin with the Florida Supreme Court's direction for interpreting procedural rules. In <u>Strax Rejuvenation & Aesthetics Institute, Inc. v. Shield</u>, 49 So. 3d 741, 742 (Fla. 2010), the Florida Supreme Court held that "[p]rocedural rules should be given a construction calculated to further justice, not to frustrate it." (quoting <u>Singletary v. State</u>, 322 So. 2d 551, 555 (Fla. 1975)).

Rule 9.130(a)(3)(C)(xi) provides as follows: "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to sovereign immunity." The majority interprets this rule as including the requirement that an order "expressly" determine entitlement to sovereign immunity, although the word "expressly" does not appear anywhere in the rule. In reaching this interpretation the majority: (1) relies on this Court's opinion in <u>Citizens Property Insurance Corp. v. Sosa</u>, 215 So. 3d 90 (Fla. 3d DCA 2016), wherein this Court found it had no jurisdiction to address Citizens' interlocutory appeal because the record unequivocally reflected that the trial court did not even reach the issue of sovereign immunity; (2) avoids addressing the language found in two Florida Supreme Court cases that conflict with the majority's interpretation of the rule; and (3) relies on case law involving workers' compensation immunity, which, as will be discussed in this opinion, differs from sovereign immunity.

**A. <u>Sosa</u>**

In <u>Sosa</u>, Citizens moved to strike the bad-faith allegations in the complaint and to dismiss and/or strike counts II and III based on Citizens' sovereign immunity as a matter of law from bad-faith claims. <u>Sosa</u>, 215 So. 3d at 91. However, as this Court noted in its opinion, the record reflected that the trial court did not even reach the issue of sovereign immunity when it denied Citizens' motion to dismiss. <u>Id.</u> Instead, the trial court abated or stayed any action on those counts, and abated any consideration of Citizens' claim of sovereign immunity until the issues of coverage and liability were resolved. <u>Id.</u> Although the wisdom of the trial court's ruling is certainly questionable because sovereign immunity should be addressed at the earliest opportunity, this Court clearly lacked jurisdiction to review the trial court's interlocutory order because the trial court did not consider, much less determine, Citizens' claim of sovereign immunity. Because the trial court did not rule on Citizens' sovereign immunity claim in <u>Sosa</u>, the majority's reliance on <u>Sosa</u> in support of its conclusion is misplaced.

**B. <u>The Florida Supreme Court</u>**

**(1) <u>Beach Community Bank</u>**

The majority's interpretation of rule 9.130(a)(3)(C)(xi) is also in conflict with the Florida Supreme Court's interpretation of the rule. In <u>Beach Community Bank v. City of Freeport, Florida</u>, 150

6

So. 3d 1111 (Fla. 2014), the Florida Supreme Court accepted jurisdiction to review the First District Court of Appeal's opinion in <u>City of Freeport v. Beach Community Bank</u>, 108 So. 3d 684 (Fla. 1st DCA 2013). The City of Freeport moved to dismiss the complaint based on its sovereign immunity from suit. The trial court issued an order denying the City's motion to dismiss. A review of the record before the First District and the Florida Supreme Court reflects that the order in question merely stated that the City's "**Motion to Dismiss with Prejudice is denied and Defendant shall file a responsive pleading within 20 days of the date of this Order**." (emphasis added). Importantly, the order denying the motion to dismiss did not state that the trial court had determined, as a matter of law, that the City was not entitled to sovereign immunity.

The City filed a petition for writ of certiorari to review the non-final order on the basis that the City was entitled to sovereign immunity as a matter of law and thus the trial court departed from the essential requirements of law by denying its motion to dismiss. <u>City of Freeport</u>, 108 So. 3d at 686. The First District agreed with the City, granted certiorari relief, and granted the petition. <u>Id.</u> On review to the Florida Supreme Court, the original question was whether the District Court could exercise certiorari jurisdiction to review the trial court's non-final order. <u>Beach Cmty. Bank</u>, 150 So. 3d at 1112. However, because the Florida Bar Appellate Court Rules Committee's proposed amendment to rule 9.130 was pending before the Florida Supreme

7

Court and the Court concluded that "this case falls squarely within the new rule amendment," the Court determined "that the City should be entitled to the benefit of the new rule." Id. at 1113. Specifically, the Court held that the proposed amendment "answers the question that the City asks this Court to confront in this case. **This amendment permits district courts to review non-final orders of decisions determining entitlement to sovereign immunity <u>where the case involves a pure legal question</u>**." Id. (emphasis added).

Importantly, although the trial court's order simply denied the City's motion to dismiss, ordered the City to file responsive pleadings within twenty days, and did not include the language that the denial of the motion to dismiss on the basis of sovereign immunity was a denial as a matter of law, the First District nevertheless reviewed the order and determined that the City was entitled to sovereign immunity, and the Florida Supreme Court reviewed the same order and agreed. Beach Cmty. Bank, 150 So. 3d at 1114. Thus, the Florida Supreme Court quashed the First District's decision to the extent that it resolved the issue based on certiorari review, but approved the decision based on the amendment to rule 9.130 and issued its opinion on the very same day that it approved the amendment to rule 9.130. Id. at 1114-15.

   **(2) <u>Keck</u>**

The Florida Supreme Court's opinion in <u>Keck v. Eminisor</u>, 104 So. 3d 359 (Fla. 2012), also suggests that the

8

majority's interpretation of rule 9.130(a)(3)(C)(xi) is incorrect. In <u>Keck</u>, the trial court issued an order denying Keck's motion for summary judgment based on his claim of immunity under section 786.28(9)(a). Keck sought review, but because rule 9.130 had not yet been amended to permit interlocutory appeals of trial court orders denying summary judgment, Keck petitioned the First District for a writ of certiorari. <u>Keck</u>, 104 So. 3d at 362. Because the First District concluded that certiorari review was not proper, it denied the petition without addressing the merits of the petition. <u>Id.</u> The First District, however, certified a question to the Florida Supreme Court; the Florida Supreme Court accepted jurisdiction; and the Court rephrased the certified question as follows:

> Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court to the extent that the order turns on an issue of law.

<u>Id.</u> at 360-61.

In answering the certified question, the Florida Supreme Court noted that in <u>Tucker v. Resha</u>, 648 So. 2d 1187 (Fla. 1994), the Court had "examined whether to expand the category of non-final appealable orders to include orders denying summary judgment based on a qualified immunity claim," and because of the nature of the rights involved, the Court concluded that interlocutory review must be available to an individual whose claim of qualified immunity was denied by the trial court. <u>Id.</u> at 364.

The Court specifically noted that:

> **Because qualified immunity of public officials involves *immunity from suit* rather than a mere defense to liability, we reasoned that immunity from suit is effectively lost if a case is erroneously permitted to go to trial because a trial court's order denying qualified immunity cannot be reviewed on appeal from a final judgment as the public official cannot be re-immunized if erroneously required to stand trial or face the other burdens of litigation.**

Id. at 364 (internal quotations omitted) (citing Tucker, 648 So. 2d at 1189)

(emphasis added). The Florida Supreme Court went on to say that, in Tucker,

> [w]e stressed that if orders denying summary judgment based upon claims of qualified immunity are not subject to interlocutory review, the qualified immunity of public officials is illusory and the very policy that animates the decision to afford such immunity is thwarted. We held that an order denying summary judgment based upon a claim of qualified immunity should be subject to interlocutory review to the extent that the order turns on an issue of law.

Keck, 104 So. 3d at 365 (internal quotations and citations omitted).

The Florida Supreme Court in Keck, therefore, concluded that:

> [I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. **If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant**.
>
> For the above reasons, we answer the rephrased question in the negative and hold that **an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) is subject to interlocutory review where the issue turns on a question of law**.

10

<u>Keck</u>, 104 So. 3d at 366 (emphasis added).

Based on the Florida Supreme Court's ruling in <u>Keck</u>, Justice Pariente, in her concurring opinion, recommended that the Florida Bar Appellate Court Rules Committee submit a proposed amendment and that when it addressed the rule amendment, that it do so more broadly to address interlocutory appeals of immunity claims in a comprehensive manner. <u>Id.</u> at 369.

While I recognize that in <u>Keck</u> the Florida Supreme Court was addressing individual immunity under section 768.28(9)(a), rather than sovereign immunity, Justice Pariente asked the Florida Bar Appellate Court Rules Committee to address interlocutory appeals of immunity claims in a comprehensive manner, and rule 9.130(a)(3)(C)(xi) was amended in direct response to Justice Pariente's request. It also makes no sense to treat orders that deny an individual's immunity any differently than orders that deny an entity's immunity. In both instances, the defendant who is entitled to immunity as a matter of law should not be forced to litigate the plaintiff's claims simply because the trial court issues an unelaborated order.

**C. <u>The majority's reliance on cases involving workers' compensation immunity is misplaced</u>**

In support of its argument that the trial court must expressly state in its non-final order that it is determining, as a matter of law, that a party is not entitled to

11

sovereign immunity, the majority relies on cases addressing workers' compensation immunity under rule 9.130(a)(3)(C)(v). Rule 9.130(a)(3)(C)(v) states that a party may appeal a non-final order determining "that, as a matter of law, a party is not entitled to workers' compensation immunity." The Florida Supreme Court, in construing rule 9.130(a)(3)(C)(v), has stated that "[n]onfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order **specifically states** that, as a matter of law, such a defense is not available to a party." Hastings v. Demming, 694 So. 2d 718, 720 (Fla. 1997) (emphasis added); Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 821 (Fla. 2004) (stating that "a district court does not have jurisdiction to review a nonfinal order denying summary final judgment unless the trial court's order **explicitly states** that the defendant will not be entitled to present a workers' compensation immunity defense at trial") (emphasis added).

This case law is highly distinguishable, as is rule 9.130(a)(3)(C)(v). Unlike a claim for entitlement to sovereign immunity, **workers' compensation immunity is an affirmative defense**, involving factual issues that typically preclude a dismissal at the pleading stage. See Gen. Cinema Beverages of Miami, Inc. v. Mortimer, 689 So. 2d 276, 277 (Fla. 3d DCA 1995) ("Establishment of workers' compensation immunity usually requires the employer to bring forth facts from outside the four corners of the complaint, which necessarily requires a motion for summary judgment."); Eiler v. Camp

12

Dresser & McKee, Inc., 542 So. 2d 441, 442 (Fla. 5th DCA 1989) (stating that "the exclusivity provision set forth in section 440.11 of the Workers' Compensation Act is an affirmative defense which cannot be raised by a motion to dismiss unless the allegations of a prior pleading in the case demonstrate the existence of such a defense"); see also Ruiz v. Aerorep Grp. Corp., 941 So. 2d 505, 508 (Fla. 3d DCA 2006) ("Although workers' compensation immunity usually cannot be raised in a motion to dismiss, an exception exists allowing the defense to be raised in a motion to dismiss where the defense appears on the face of the complaint.").

Thus, in the context of an order denying, without explanation, a motion that is premised on the affirmative defense of workers' compensation immunity, it may be difficult to determine whether the trial court denied a party's claim for workers' compensation immunity due to factual issues that must be resolved prior to adjudicating the legal issue of immunity, or whether the trial court determined, as a matter of law, that a party is not entitled to the workers' compensation immunity.

There are, however, cases outside of the workers' compensation context, where a trial court can determine, as a matter of law, whether a defendant is entitled to sovereign immunity, and where it is not necessary to resolve factual issues.

Additionally, even in the workers' compensation immunity context, at least one of our sister courts has raised a significant concern about parties and trial courts intentionally obfuscating the real

13

justifications for orders denying a party's claim for workers' compensation immunity. In Martin Electronics, Inc. v. Glombowski, 705 So. 2d 26 (Fla. 1st DCA 1997) (en banc), the First District Court of Appeal held that it lacked appellate jurisdiction to review a non-final order denying a motion to dismiss. Id. at 27. The trial court below determined that there were insufficient **facts** to decide the issue of workers' compensation immunity, but specifically noted that "[t]his determination does not mean that this Court may not ultimately be presented with sufficient facts to determine this issue as a matter of law." Id. at 28. On appeal, the majority opinion held, in applying the Florida Supreme Court's decision in Hastings, that a non-final order denying a motion to dismiss based on workers' compensation immunity must expressly determine, as a matter of law, that workers' compensation immunity is unavailable. Id. at 29-30. However, Judge Wolf, specially concurring, raised a significant concern regarding appeals from orders denying motions to dismiss, as opposed to orders denying motions for summary judgment, which deny a party's claim for workers' compensation immunity:

> In these cases, there can be no disputed facts. The decision concerning the motion must assume that all the facts in the complaint are taken as true and all inferences are drawn in favor of the plaintiff. Thus, the denial of the motion cannot be based on disputed facts, but must constitute a legal ruling on a given set of facts.

Id. at 31-32 (citation omitted).

14

Thus, any analogy between rule 9.130(a)(3)(C)(xi) and rule 9.130(a)(3)(C)(v) and reliance on cases addressing workers' compensation law is unpersuasive.

**D. The majority's interpretation of the rule will lead to an absurd result**

In Keck, 104 So. 3d at 366, the Florida Supreme Court held that "**an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) is subject to interlocutory review where the issue turns on a question of law.**" (emphasis added). The Court did not say, nor hold, that interlocutory review should be limited to orders that expressly specify the basis for the trial court's ruling. If it is clear that a trial court's denial of a motion to dismiss or a motion for summary judgment is a **determination** that, as a matter of law, a party is not entitled to sovereign immunity, then the order is subject to appellate review.

To hold otherwise would defeat the purpose of the amendment to rule 9.130. See Strax, 49 So. 3d at 742 (holding that "[p]rocedural rules should be given a construction calculated to further justice, not to frustrate it") (quoting Singletary 322 So. 2d at 555). The purpose behind amending rule 9.130 to include rule 9.130(a)(3)(C)(xi) was to protect parties who are entitled to sovereign immunity from suit as a matter of law. To construe rule 9.130(a)(3)(C)(xi) so narrowly as to require a party to continue litigating a case when, as a matter of law, it is sovereignly immune from suit, would

15

render the rule change meaningless. As the Florida Supreme Court stated in <u>Keck</u>, 104 So. 3d at 366:

> [I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant.
>
> For the above reasons, we answer the rephrased question in the negative and hold that an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) **is subject to interlocutory review where the issue turns on a question of law**.

(emphasis added).

In order for a party's entitlement to sovereign immunity to provide any meaningful protection, the party must have the ability to challenge the trial court's determination that, as a matter of law, it is not entitled to immunity **before and without being required to defend itself against the merits of the claims**.

The majority concludes that, because the trial court's order does not articulate the basis for its ruling, there could be a number of reasons why the trial court denied the County's motion for summary judgment. For example, the majority posits that there may have been disputed issues of material fact precluding summary judgment. While I agree that the record may support a finding that there are disputed issues of material fact as to whether the County owed Pozos a duty of care, the record does not suggest that

16

there were disputed issues of material fact as to whether the County is sovereignly immune from suit. Thus, the determination as to whether the County is sovereignly immune from suit is a legal determination, not a factual determination, in this case.

**E. The majority and the trial court conflate the questions of duty and sovereign**
    **immunity**

As will be discussed at length below, whether a governmental entity may be held tortiously liable involves a two-prong analysis: (1) whether the defendant owes a duty of care to the plaintiff; and (2) whether the defendant is sovereignly immune from suit. Wallace v. Dean, 3 So. 3d 1035, 1044 (Fla. 2009). Thus, even if there were disputed issues of material fact as to whether the County owed Pozos a duty of care, if there were no disputed issues of material fact regarding the immunity prong, and the undisputed evidence reflects that the County is entitled to sovereign immunity as a matter of law, then the trial court was required to grant the County's motion for summary judgment, and this Court has jurisdiction to review the trial court's determination to the contrary.

When addressing the issue of governmental tort liability under Florida law, the court's "duty analysis is *conceptually distinct* from any later inquiry regarding whether the governmental entity remains sovereignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes." Wallace, 3 So. 3d at 1044 (emphasis in

the original) (footnote omitted).  The analysis is a two-prong analysis.  "If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached."  Pollock v. Fla. Dep't of Highway Patrol, 882 So. 2d 928, 932 (Fla. 2004); see also Breaux v. City of Miami Beach, 899 So. 2d 1059, 1063 (Fla. 2005) (noting that "[i]n cases involving governmental tort liability, we generally determine whether the defendant owes a duty of care to the plaintiff before we address whether the governmental entity is immune from liability"); Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003) (identifying "duty of care" as the first required element of a negligence claim); Henderson v. Bowden, 737 So. 2d 532, 535 (Fla. 1999) ("A threshold matter is whether the [defendant] had a duty to act with care toward the decedents . . . .").  "[T]he absence of a duty of care between the defendant and the plaintiff results in *a lack of liability, not* application of immunity from suit."  Wallace, 3 So. 3d at 1044 (emphasis in original).  In other words, the absence of a duty of care renders the defendant not liable as a matter of law, and the trial court does not need to address whether the governmental entity is sovereignly immune from suit. Wallace, 3 So. 3d at 1045.

The same holds true for sovereign immunity.  If the defendant is sovereignly immune from suit, then the trial court need not address whether the defendant owed the plaintiff a duty of care because

18

the analysis has two-prongs. Even where the plaintiff has established the existence of the governmental entity's duty of care towards the plaintiff, or there are material issues of disputed fact as to the governmental entity's duty of care, if the governmental entity is entitled to sovereign immunity, it is shielded from legal action and liability. Wallace, 3 So. 3d at 1044; see also Henderson, 737 So. 2d at 535 (concluding that even "[a]ssuming a duty is owed, we must then determine whether sovereign immunity bars an action for an alleged breach of that duty").

In Wallace, 3 So. 3d at 1045, the Florida Supreme Court warned against conflating the two separate prongs of the analysis, and noted that in Miami-Dade County v. Fente, 949 So. 2d 1101, 1103-05 (Fla. 3d DCA 2007), and Seguine v. City of Miami, 627 So. 2d 14, 17 (Fla. 3d DCA 1993), this Court had conflated the issue of whether the government owed a duty of care to the plaintiff with the separate and distinct issue of whether the doctrine of sovereign immunity shields the government from tort liability. See also City of Belle Glade v. Woodson, 731 So. 2d 797 (Fla. 4th DCA 1999) (similarly conflating duty of care with sovereign immunity). The record demonstrates that the County established under the second prong of the analysis that, as a matter of law, it is sovereignly immune from suit. Thus, the issue of whether the County owed Pozos a duty of care is immaterial and the trial court erred by denying the County's motion for summary judgment.

## II. The County is entitled to sovereign immunity as a matter of law

### A. Generally

Under the two-prong analysis, the County is immune from liability if the County establishes **either** that it owed Pozos no duty of care **or** the County demonstrates that it is sovereignly immune from suit. In Trianon Park Condominium Ass'n v. City of Hialeah, 468 So. 2d 912 (Fla. 1985), the Florida Supreme Court issued a comprehensive opinion regarding governmental actors and alleged tort victims. Wallace, 3 So. 3d at 1047. To summarize, the Trianon Court made the following findings.

1. First, "for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct. For certain basic judgmental or discretionary governmental functions, there has never been an applicable duty of care." Trianon, 468 So. 2d at 917 (internal citations omitted).

2. Second, "the enactment of the statute waiving sovereign immunity did not establish any new duty of care for governmental entities." Id. Thus, governmental entities have the identical duties of care as private persons do. Id.

3. Third, "there is not now, nor has there ever been any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons." Id. at 918

4. Fourth, "under the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights." Id. Specifically, the Court held that "[j]udicial intervention through private tort suits into the realm of discretionary decisions relating to basic governmental functions would require the judicial branch to second guess the political and police power decisions of the other branches of government and would violate the separation of powers doctrine." Id.

5. Lastly, "certain discretionary functions of government are inherent in the act of governing and are immune from suit. It is 'the nature

20

of the conduct, rather than the status of the actor,' that determines whether the function is the type of discretionary function which is, by its nature, immune from tort liability." Id. (internal citations omitted).

The Florida Supreme Court's finding that "certain discretionary functions of government are inherent in the act of governing and are immune from suit" is, perhaps, the most difficult finding to apply, especially since the demarcation between discretionary and other executive or administrative decisions must be determined on a case-by-case basis. Id. Thus, the Court set forth a list of criteria to assist the courts when determining whether the governmental conduct eminates from the discretionary planning or the judgment phase of government, which is not subject to tort liability, or during the operational phase of government. If the governmental conduct or decision was operational, tort liability may attach **if** there exists either a common law or statutory duty of care **and** there exists no sovereign immunity for the governmental conduct or decision. Id.

The four categories regarding governmental functions are as follows:

I.      *Legislative, Permitting, Licensing, and Executive Officer Functions.*
        Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions.

21

These actions are inherent in the act of governing.

II. *Enforcement of Laws and Protection of the Public Safety.*

How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies to suppress fires. This same discretionary power to enforce compliance with the law is given to regulatory officials . . . .

The lack of a common law duty for exercising a discretionary police power function must, however, be distinguished from existing common law duties of care applicable to the same officials or employees in the operation of motor vehicles or the handling of firearms during the course of their employment to enforce compliance with the law. In these latter circumstances there always has been a common law duty of care and the waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care.

III. *Capital Improvement and Property Control Functions.*

As this Court has made clear in prior cases, there is no liability for the failure of a governmental entity to build, expand, or modernize capital improvements such as buildings and roads. . . . On the other hand, once a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property.

IV. *Providing Professional, Educational, and General Services.*

Providing professional, educational, and general services for the health and welfare of citizens is distinguishable from the discretionary power to enforce compliance with laws passed under the police power of this state. These service activities, such as medical and educational services, are performed by private persons as well as governmental entities, and common law duties of care clearly exist. Whether there are sufficient doctors provided to a state medical facility may be a

discretionary judgmental decision for which the governmental entity would not be subject to tort liability. Malpractice in the rendering of specific medical services, however, would clearly breach existing common law duties and would render the governmental entity liable in tort.

Id. at 919-921 (italics in original; internal citations omitted).

In Wallace, the Florida Supreme Court explained that the activities listed in Category I pertain to the public at large, and thus, they do not support a duty of care toward individual plaintiffs. Id. at 1047. The same is true for activities falling within Category II, unless it can be shown that the governmental actor owed the alleged tort victim a "special duty of care." Id. at 1047-48. On the other hand, Category III and IV activities may generally subject the government to liability. Id. at 1048.

## B. Sovereign Immunity

As stated earlier, even where a duty is owed, sovereign immunity may bar an action for an alleged breach of that duty, see Pollock, 882 So. 2d at 932-33; Henderson, 737 So. 2d at 535; Kaisner, 543 So. 2d at 734, because in Florida, "governmental immunity derives entirely from the doctrine of separation of powers, not from a duty of care or from any statutory basis." Kaisner, 543 So. 2d at 737.

When addressing the test for determining when a governmental entity enjoys sovereign immunity, the Florida Supreme Court held "that the separation-of-powers provision present in article II,

23

section 3 of the Florida Constitution requires that 'certain [quasi-legislative] policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability.'" Wallace, 3 So. 3d at 1053 (quoting Commercial Carrier Corp. v. Indian River Cty., 371 So. 2d 1010, 1020 (Fla. 1979)). On the other hand, decisions made at the operational level—decisions or actions implementing policy, planning, or judgmental governmental functions—generally do not enjoy sovereign immunity. Commercial Carrier, 371 So. 2d at 1021. "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." Id. (footnote omitted).

While nearly every endeavor involves some level of discretion, it is the governmental quasi-legislative discretion exercised at the policy-making or planning level which is protected from tort liability. Wallace, 3 So. 3d at 1053; Yamuni, 529 So. 2d at 260. Thus, in addition to the five basic principles identified by the Florida Supreme Court in Trianon, which have been listed at the beginning of this analysis, the Court recognized that "there were areas of government activity where orthodox tort liability stops and the act of governing begins, . . . as well as the distinct principle of law . . . which makes not actionable in tort certain judgmental decisions of governmental authorities which are inherent in the act of governing." Trianon, 468 So. 2d at 918 (internal citations and quotation marks omitted). Further, "certain discretionary

governmental functions remain immune from tort liability . . . because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." Id. (internal citations and quotation marks omitted).

C. **Applying the Law to the Instant Case**

Even if the trial court found that the County owed Pozos a duty of care or that there were material facts in dispute or facts that needed to be resolved by the jury as to duty, if the County's conduct, actions, or decisions resulted from its discretionary policy-making or planning functions, then the County is sovereignly immune from suit as a matter of law.

The record reflects the following. On August 24, 2012, Eli Salgado purchased a Miami-Dade County Park Foundation membership for $149. This membership included a coupon book containing several promotional items, including two tickets to the zoo, a 50% discount coupon for golf, and a coupon for the use of a park shelter without payment of the requisite rental fee. Along with Salgado's membership and the coupon booklet, Salgado was given a copy of the Park's rules and regulations to be followed when renting a facility at the Park. These rules contained a section regarding when permits and off-duty officers are required, and provided notice to Salgado that it was his responsibility to obtain the correct permit(s) and to hire off-duty police officers under certain circumstances. For example, these rules provided that

25

when a D.J., live music, or speakers are going to be used, the person renting the facility or hosting the event at the Park must obtain a broadcast permit and hire and pay for off-duty police officers. Depending on the type or size of the party or event, other permits are required, and again, Salgado must hire off-duty police officers to provide security for the event. Specifically, the rules and regulations provided that if Salgado was expecting over a certain number of guests, then he would be required to hire two off-duty police officers and obtain a special events permit. The rules and regulations additionally stated that the Park's employees would not be responsible for providing any of these items.

When Salgado rented a shelter at the Park for his September 22, 2012 birthday party, he simply asked to rent the shelter and used the free rental coupon contained in his membership coupon booklet. He did not advise anyone that he was going to hire a D.J., and he did not obtain any permits or hire any off-duty police officers. Instead, he procured two private security officers to provide security at the party.

The only Park employee present for this after-hours private party was Diogenes Martin, a part-time Park Service Aide, whose responsibilities were to clean the restrooms and the Park before and after an event, to keep the area clean, and change the trash bags during the event. Also present was a teenage volunteer who was helping Martin that night. Victor Jenkins, the Goulds South Dade Zone Manager, who is responsible for

26

managing seventeen parks for Miami-Dade County Parks and Recreation, testified in his deposition that the County has only budgeted for twenty-seven park security officers to service all of the recreational facilities throughout the County. These officers are directed to mainly patrol the beaches and marinas on the weekends. Because the County does not provide security at these private parties and events, it requires the patron renting a park facility to contact the police department and hire off-duty officers for certain events.

Martin testified in his deposition that he performed his duties as required on the night of the party. He made sure the restrooms and area were clean, the trash was properly disposed of, and the trash bags were changed when the trash cans became full. He explained that Salgado was celebrating his eighteenth birthday, and the party consisted of mostly sixteen-to-eighteen-year-olds who were eating, dancing, and just having a good time. Salgado's parents were present, and there were also two large men wearing "Security" T-shirts present who appeared to be patrolling the area and providing security for the party. He did not see anyone using drugs, fighting, or having a confrontation with anyone. Everything was calm and everyone seemed to be having a good time when all of a sudden, at around 10:00 or 10:30 p.m., he heard shots fired. As soon as he realized that some of the kids had been shot, he called 911 and then his supervisor.

Inga Portilla, a Park Manager, confirmed that Park Service Aides are only responsible for maintenance within the

Park.  They do not provide security, do not check to see if the renter has obtained the required permits, are not trained in crime prevention, and are not authorized to "police" the area.  She also confirmed that after Salgado paid his membership fee, a booklet was sent to his house containing the rental coupon and a copy of the Park's rules and regulations.  These rules and regulations are also posted at the Park.  Portilla explained that "once we rent the facility . . . we don't have anything to do with direct involvement of the parties," and that it was Salgado's responsibility to follow the rules, obtain the necessary permits, and hire off-duty police officers if he was having a party that required off-duty police officers, as "[w]e are not responsible for the party."

Pozos presented no evidence to refute any of the above referenced evidence.  The affidavit/statement provided by Salgado, the renter and host of the party, does not refute the testimony of the park employees or the physical evidence.  Salgado did not dispute that he had received a copy of the Park's rules and regulations related to rentals of the Park's facilities.  He merely stated that **when he rented the pavilion,** he was not advised that he needed to hire off-duty officers and that he **did not recall** if anyone had asked him how many people he expected would be attending the party.

Therefore, the unrefuted evidence supports the legal conclusion that the County made a discretionary policy/planning decision to allow patrons of its parks to rent its facilities for private parties or

events. Relying on its legislative/permitting/licensing authority, the County enacted certain rules and regulations governing the rental and use of its parks and the park's facilities. Based on the County's limited resources, it exercised its discretion to assign only twenty-seven officers to the Parks and Recreation Department to service all of the parks, beaches, and County-owned recreational areas located throughout the county and to direct those officers to primarily patrol the public beaches and marinas on the weekends, rather than directing them to patrol and monitor private parties being held in public parks. The County, therefore, included certain restrictions and requirements within its enacted rules and regulations and rental agreements, which the party or event host was required to follow. Among other things, these rules and regulations required the renter to go to the police department and (1) obtain a broadcast permit if using a D.J., live music, or sound equipment; (2) obtain a special event permit if over 200 guests were expected to attend; and (3) hire off-duty police officers under each of these scenarios. The rules and regulations and the rental agreement specified that the County's park employees would not be responsible for the failure to meet any of these requirements.

When Salgado purchased his Park membership, he was sent a copy of these rules and regulations. Salgado, however, did not abide by these rules and regulations when he used his free coupon to rent a pavilion for his birthday party. Although he had a D.J. and sound

equipment at the party, he did not obtain a broadcast permit or hire off-duty police officers from a police department. Whether he was additionally required to obtain a special event permit and hire off-duty police officers based on the number of guests he expected to attend is unclear because the evidence does not reflect whether Salgado expected so many people to attend and whether there were more than 200 guests at the party. Nevertheless, this issue is irrelevant because, based on Salgado's use of a D.J. and sound equipment, he was required to hire two off-duty police officers anyway. However, instead of obtaining the necessary permit(s) and hiring off-duty police officers, Salgado hired two private-duty security officers.

Whether Salgado's failure to follow the County's rules and regulations was the proximate cause of the shooting during his party is, however, not the issue before us. Setting aside the question of whether the County even had the duty to protect Salgado's invitees against the unlawful conduct of a third party during Salgado's party at the Park, the County was sovereignly immune from tort liability as a matter of law. As stated earlier, that is because if the County demonstrated that **either** it did not owe the plaintiff a duty of care **or** the County's decision, omission, or conduct was as a result of its quasi-legislative discretionary policy or planning decision, then the County would be sovereignly immune from tort liability. Wallace, 3 So. 3d at 1044; Henderson, 737 So. 2d at 535; Kaiser, 543 So. 2d at 734; Trianon, 468 So. 2d at 917- 21.

30

Because the County's decisions were quasi-legislative discretionary policy or planning decisions it is sovereignly immune and thus, it was entitled to summary judgment as a matter of law. This conclusion is supported by prior decisions from the Florida Supreme Court, this Court, and our sister courts.

For example, in Delgado v. City of Miami Beach, 518 So. 2d 968 (Fla. 3d DCA 1988), this Court affirmed the trial court's order granting the City of Miami Beach's motion for summary judgment after concluding that the City of Miami Beach was protected from liability under the doctrine of sovereign immunity as a matter of law. Delgado was injured when someone in the crowd ignited fireworks that struck and burned Delgado's leg while he was attending a concert and a fireworks display sponsored by the City of Miami Beach. Delgado claimed that the City of Miami Beach, which had sponsored the event, breached its duty by failing to prohibit the attendees from possessing and detonating their own fireworks. This Court, however, concluded that the City of Miami Beach's "actions fell within the planning-level, discretionary function of government, for which no liability attaches." Id. at 969. Specifically, this Court held that "[t]he manner in which a city, through its police officers, exercises discretionary authority to enforce compliance with the laws and protect the public safety, falls squarely within the city's power to govern. Accordingly, the city is protected under the doctrine of sovereign immunity." Id. (citing Trianon, Commercial Carrier, and other cases).

31

As in <u>Delgado</u>, the County's actions in the instant case—not assigning officers to patrol or be present at private parties or events held in its public parks, but to, instead, require those who rent its park facilities to obtain permits and hire off-duty officers under certain circumstances—was a discretionary planning and/or policy decision. It was a governmental decision made in the exercise of its discretionary authority regarding the manner in which compliance and enforcement of the law and the protection of the public would be effectuated. The manner in which the County notified those who rented its park facilities of their obligations and responsibilities was also a planning/policy discretionary governmental decision. Because parks such as Benito Juarez Park were "un-manned" parks with only part-time maintenance employees in attendance, the County, in the exercise of its discretion, put into place a policy requiring the County to notify each individual who purchased a Park membership or rented a Park facility by providing him/her with a copy of the Park's rules and regulations. The unrefuted evidence in this case is that these rules and regulations were sent to the Salgado's home along with his coupon book after he purchased his Park membership. Because these decisions fell squarely within the County's power to govern, they are protected as a matter of law under the doctrine of sovereign immunity.

The decisions of the County regarding where and how to deploy its available manpower (sworn police officers) is a discretionary or planning function. And, as the Florida Supreme Court stated in

Trianon, "under the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights." Trianon, 468 So. 2d at 918. "While sovereign immunity is a silent issue here, we ought not lose sight of the fact that inherent in the right to exercise police powers is the right to determine strategy and tactics for the deployment of those powers." Wong v. City of Miami, 237 So. 2d 132, 134 (Fla. 1970); see also Commercial Carrier, 371 So. 2d at 1020 (quoting Wong, 237 So. 2d at 134):

> The sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence. Here officials thought it best to withdraw their officers. Who can say whether or not the damage sustained by petitioners would have been more widespread if the officers had stayed . . . .

The County's decisions as to how many officers to employ and allocate to patrol the County's recreational facilities, whether to rent its facility for the use of a private party or function, what rules and regulations should be adopted for that purpose, and the responsibilities and duties to be borne by the renter, are all quasi-legislative discretionary policy/planning decisions. Thus, the County is sovereignly immune from suit, and therefore, it was entitled to summary judgment as a matter of law. By denying the County's motion for summary judgment and rejecting the County's sovereign immunity argument, the trial court determined as a matter of law, that the County is not entitled to sovereign immunity.

**CONCLUSION**

The determination of whether a governmental entity is immune from liability involves a two-prong analysis: (1) whether the governmental entity owed the plaintiff a duty of care; and (2) whether sovereign immunity bars the actions based on an alleged breach of that duty. If the governmental entity establishes **either** that it owed no duty to the plaintiff **or** it was entitled to sovereign immunity, it is entitled to summary judgment.

Although the trial court's order merely denies the County's motion for summary judgment, the failure to specify the basis for that denial is not fatal because, even if the County owed the plaintiff a duty of care or there was a material factual dispute as to the issue of duty, the County is sovereignly immune from suit as a matter of law because it established the second prong of the analysis—that the County's decisions in this case were discretionary, quasi-legislative, planning, or policy decisions. Because the facts relating to sovereign immunity are not in dispute, the denial of the County's motion for summary judgment on the basis of sovereign immunity was **determined** by the trial court as a matter of law. We, therefore, have jurisdiction to review that **determination**. Because the record establishes that the County is sovereignly immune from suit as a matter of law, the trial court erred by denying the County's motion for summary judgment. Accordingly, I would reverse the order on appeal and remand for entry of an order granting summary judgment in favor of the County.

## III. <u>Recommendation to the trial courts</u>

The protection from suit is a valuable protection. If a defendant who is entitled to immunity from suit is erroneously required to litigate the case and to stand trial, that individual or entity has lost the right bestowed by statute to be protected from even being named as a defendant, thereby rendering the statutory protection meaningless. <u>Keck</u>, 104 So. 3d at 366. This problem can be easily remedied if the trial courts simply issue orders that clarify the trial court's ruling when ruling on a motion to dismiss or a motion for summary judgment where the issue of immunity is raised and litigated. The order should state whether the motion for dismissal or for summary judgment on the claim of immunity is being denied as a matter of law, and, if not, why not. Appellate review should not be thwarted by the issuance of an unelaborated order.